# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO SANDOVAL-VELA,<br><br>                              Petitioner,<br><br>  vs.<br><br>JANET NAPOLITANO, Secretary of the Department of Homeland Security; ERIC HOLDER, Attorney General; ROBIN F. BAKER, Director of San Diego Field Office, U.S. Immigration and Customs Enforcement; and ERIC NOONAN, Warden, Western Regional Detention Facility,<br><br>                             Respondents. | CASE NO. 10-CV-0059 - IEG (RBB)<br><br>ORDER:<br><br>(1) DECLINING TO DISMISS THE CASE AS MOOT;<br><br>(2) DENYING PRELIMINARY INJUNCTION;<br><br>(3) DISSOLVING TEMPORARY RESTRAINING ORDER; and<br><br>(4) STAYING THE CASE PENDING RESOLUTION OF PETITIONER'S APPEAL TO THE AAO.<br><br>[Doc. No. 2] |

      Currently before the Court are Petitioner's Ex Parte Application for a Preliminary Injunction and Respondents' request that the petition as a whole be dismissed as moot. Having considered the parties' arguments, and for the reasons set forth below, the Court **DECLINES TO DISMISS** the petition as moot. However, the Court also **DENIES** the application for a preliminary injunction and **DISSOLVES** the Temporary Restraining Order ("TRO") entered on January 8, 2010.

**BACKGROUND**

**I.     Factual background**

Petitioner Eduardo Sandoval-Vela was born in Mexicali, Baja California, Mexico on April 17, 1973. He claims derivative United States citizenship through his father, Eduardo Sandoval-Salgado. Mr. Sandoval-Salgado was born in Mexico on September 20, 1952, and received his U.S. certificate of citizenship on January 2, 1981. Mr. Sandoval-Salgado derived his United States citizenship through his father, Mr. Benito Sandoval, who was born in Venice, California on August 28, 1926.

It appears Mr. Sandoval-Salgado came to the United States sometime in 1961 or 1962 to live with his aunt, Gloria Sandoval de Feria, and to receive medical treatment for meningitis. Medical records from the Orthopedic Hospital in Los Angeles establish that Mr. Sandoval-Salgado was admitted as a patient to that hospital on December 5, 1962. According to the declaration of his aunt, Mr. Sandoval-Salgado resided with her "until at least 1964 and most likely until 1966 or 1967." (Gloria Sandoval de Feria Decl. ¶ 10 [Doc. No. 1, Ex. F].) According to Mr. Sandoval-Salgado, he resided with his aunt until 1967 or 1968. (Eduardo Sandoval-Salgada Decl. ¶ 11 [Doc. No. 1, Ex. G].) Afterwards, Mr. Sandoval-Salgado allegedly moved to Calexico, California to work for Ms. Josephine Quan. According to Mr. Sandoval-Salgado, during this time he lived with Ms. Quan in Calexico. (Id. ¶ 18.) Mr. Sandoval-Salgado married Petitioner's mother in 1972 and by 1973 already moved back to Mexico, where Petitioner was born. (Id. ¶ 25.)

**II.     Petitioner's prior immigration and criminal history**

Petitioner immigrated to the United States on November 4, 1981. On April 29, 1996, he was convicted of possession of marijuana with intent to distribute and sentenced to twenty-one months in prison and three years of probation. On August 15, 1996, the Immigration and Naturalization Service ("INS") commenced deportation proceedings against Petitioner. Petitioner notified the Immigration Court that he wished to assert his United States citizenship as a defense to the deportation. In light of that, the Immigration Judge ("IJ") terminated the deportation proceedings. On May 17, 1997, Petitioner applied for a certificate of citizenship. However, on July 1, 1997, he withdrew the application allegedly due to his inability to provide additional evidence requested by the INS. Accordingly, on July 15, 1997, the INS reinstated removal proceedings, and on July 25, 1997, the IJ

ordered Petitioner removed. Petitioner waived appeal and was removed to Mexico on the same day.

Petitioner subsequently reentered the United States in 1998 and/or 2000, and in mid-2001 he re-applied for a certificate of citizenship. Petitioner, however, withdrew that application as well. Between 2003 and 2004, Petitioner was convicted of several crimes. Accordingly, on January 4, 2005, the Department of Homeland Security ("DHS") commenced removal proceedings against Petitioner. On January 13, 2005, the IJ ordered Petitioner removed from the United States to Mexico. Petitioner again waived appeal, and was removed on the same day. Petitioner re-entered the United States on July 4, 2005, and was granted voluntary return to Mexico sometime after September 26, 2005.

On August 12, 2008, Petitioner was convicted of providing a false statement on a DMV form and was sentenced to nine days in jail and three years of summary probation. Meanwhile, on August 7, 2008, the DHS lodged a detainer with the Imperial County jail, where Petitioner was being held at the time, to ensure his release to the DHS custody. On October 22, 2008, the DHS served Petitioner with a Notice of Intent to reinstate the January 13, 2008 removal order. On December 15, 2008, Petitioner was allegedly transferred to DHS custody and the matter was referred to the U.S. Attorney's Office for prosecution under 8 U.S.C. § 1326. On May 22, 2009, the United States and Petitioner agreed to a deferred prosecution whereby Petitioner would apply for a certificate of citizenship.

On June 16, 2009, Petitioner re-applied for a certificate of citizenship, providing new sworn declarations from his father, his father's aunt, and his father's cousin. On November 9, 2009, the U.S. Citizenship and Immigration Services ("USCIS") denied the application, and Petitioner appealed to the Administrative Appeals Office ("AAO"). That appeal is currently pending. On January 7, 2010, the government moved to dismiss without prejudice charges in the pending criminal case. On January 8, 2010, Judge Moskowitz granted the motion to dismiss criminal charges, and Petitioner was released from custody on January 11, 2010. Petitioner has remained out of custody since then.

### III. Procedural history

Petitioner commenced the present action on January 8, 2010, by filing a Petition for Writ of Habeas Corpus pursuant to 22 U.S.C. § 2241, seeking relief from an immigration detainer on the basis that he is a United States citizen who derived citizenship from his father. [Doc. No. 1]. Petitioner bases his derivative citizenship claim on Section 301(a)(7) of the Immigration and Naturalization Act

1  ("INA"), which at the time of Petitioner's birth provided that a person shall be a national or citizen
2  of the United States if he or she was born to a United States parent "who, prior to the birth of such
3  person, was physically present in the United States . . . for a period or periods totaling not less than
4  ten years, at least five of which were after attaining the age of fourteen years." 8 U.S.C. § 1401(a)(7)
5  (1973). According to Petitioner, his father met that criteria because he resided in the United States
6  from 1961 to 1973 prior to Petitioner's birth in 1973. As a result, because he is a United States citizen,
7  Petitioner argues his detention violates (1) the Non-Detention Act, 18 U.S.C. § 4001; (2) the INA; and
8  (3) the Due Process Clause of the Fifth Amendment.

9  Petitioner seeks a Court order that would, among other things: (a) enjoin Respondents from
10 enforcing the immigration detainer; (b) declare that Respondents' arrest and detention of Petitioner
11 violates the Non-Detention Act, the INA, and the Due Process Clause; (c) enjoin Respondents from
12 arresting and/or detaining Petitioner in the future without first disproving his claim to citizenship by
13 clear and convincing evidence at a hearing before a neutral arbiter; and (d) enjoin Respondents from
14 reinstating Petitioner's prior removal order(s). (Habeas Petition ¶ 31.)

15 Together with his petition, Petitioner submitted an Ex Parte Application for TRO and
16 Preliminary Injunction, asking the Court to enjoin Respondents from executing the immigration
17 detainer and to prohibit them from entering a reinstatement of a previous deportation order. [Doc. No.
18 2]. Having considered Petitioner's ex parte application, the Court granted his request for a TRO on
19 the same day and ordered Respondents to show cause why a preliminary injunction should not be
20 entered. [Doc. No. 4]. On January 15, 2010, Respondents filed a response in opposition to the
21 application for injunctive relief and a return to the petition for writ of habeas corpus. [Doc. No. 12].
22 On January 20, 2010, Petitioner filed a reply. [Doc. No. 9]. The Court held a hearing on January 22,
23 2010, at which time it ordered the TRO to be extended through January 26, 2010. [Doc. No. 13].

24 **DISCUSSION**
25 **I.    Mootness**
26 <u>A.</u>    <u>Parties' arguments</u>
27 Respondents argue the Court should dismiss the present petition as moot. According to them,
28 the Court's TRO has, in effect, rendered the case moot because it has extinguished the existence of

the immigration detainer. Seeing as Petitioner has been released, Respondents argue the case should be dismissed because he is no longer "in custody" as required by 8 U.S.C. § 2241. Moreover, Respondents argue there is no other "case" or "controversy" left for the Court to decide because there are currently no removal proceedings pending against Petitioner and no executable warrant of removal exists. Respondents further argue that even if the Court does have habeas jurisdiction, there is no further relief that the Court can grant to Petitioner.

Petitioner disputes that the case is moot due to his release. He indicates Respondents did not meet the "heavy burden" imposed on them in establishing mootness because, although he was released from custody as requested, his petition also asked for two forms of declaratory relief as well as for prospective injunctive relief against future arrest and detention. Citing Rosales-Garcia v. Holland, 322 F.3d 386, 395 n.6 (6th Cir. 2003), Petitioner argues that all that is required to be "in custody" is proper habeas jurisdiction when the case was initially filed. Moreover, Petitioner argues that Respondents' *voluntary compliance* cannot render the case moot because, absent any binding order, Respondents are free to resume the offending activity.

Petitioner further alleges that contrary to Respondents' averments, they do not have discretion in not detaining him absent a preliminary injunction. According to Petitioner, under 8 U.S.C. 1226(c), detention of certain aliens is *mandatory*. Because Respondents consider Petitioner to be an "alien" who is "removable," Petitioner argues that he is subject to further detention unless the Court enjoins Respondents as requested in the habeas petition. Additionally, Petitioner argues his request for adjudication that he cannot be detained in the future is not moot because Respondents' offending conduct is "capable of repetition, yet evading review." For example, Petitioner is afraid that if he travels anywhere, he may possibly trigger a "hit" in the computer system and thus be detained or potentially deported by an ICE field officer. Finally, Petitioner asserts the matter remains justiciable because he has challenged an "ongoing government policy" and is represented by the Federal Defender's office, "whose present and future clients are certain to be affected by the policy."

B.     Legal standard

It is axiomatic that federal courts are courts of limited jurisdiction, and as such "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."

Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994) (internal citations omitted). The court must presume that a case lies outside of its limited jurisdiction, and the burden of establishing jurisdiction is on the party asserting it. Id. (citations omitted). However, once jurisdiction is established, the presumption disappears and the "heavy burden" shifts to the party alleging that a case must be dismissed on the account of mootness. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 189-92 (2000).

For the matter to remain justiciable, "a litigant must continue to have a personal stake in the outcome of the suit throughout 'all stages of federal judicial proceedings.'" Abdala v. I.N.S., 488 F.3d 1061, 1063 (9th Cir. 2007) (quotation omitted). "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" Spencer v. Kemna, 523 U.S. 1, 7 (1998) (quotation omitted). A court must dismiss the case as moot if at any point it becomes certain either that "'the allegedly wrongful behavior could not reasonably be expected to recur,'" Laidlaw, 528 U.S. at 189 (citation omitted), or that there is no effective relief remaining for the court to provide, Calderon v. Moore, 518 U.S. 149, 150 (1996) (per curiam) (citation omitted).

    C.    Analysis

        *i.    Habeas jurisdiction was proper when the petition was filed.*

Section 2241 confers jurisdiction on federal courts to entertain petitions for habeas corpus from any person claiming to be held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); accord Maleng v. Cook, 490 U.S. 488, 490-92 (1989) (per curiam) (concluding that the petitioner must at least be "in custody" when the petition is filed for habeas jurisdiction to exist). In the present case, even though Petitioner was being held in a penal institution when the petition was filed, Respondents had "technical custody" over him due to the immigration detainer lodged and the Notice of Intent to reinstate a prior removal order. See Braden v. 30th Judicial Cir. Ct. of Ky., 410 U.S. 484, 488-89 & n.4 (1973) (the "in custody" requirement was satisfied where the Alabama warden was acting as an agent of the Commonwealth of Kentucky in holding the petitioner pursuant to a Kentucky detainer); Chung Young Chew v. Boyd, 309 F.3d 857, 865 (9th Cir. 1962) (concluding that an INS detainer plus a warrant constitute a form of custody).

Accordingly, the Court could properly exercise habeas jurisdiction over the petition when it was filed on January 8, 2010. See 8 U.S.C. § 2241(c)(3).

>    ii.    Habeas jurisdiction remains because Petitioner is still "in custody," or, if no longer "in custody," because there remain "collateral consequences" of detention.

The more pertinent question is whether Petitioner is still "in custody" even though he has since been released. The Supreme Court has indicated that a release on one's own recognizance pending execution of the challenged sentence satisfies the "in custody" requirement of Section 2241. Hensley v. Mun. Ct., 411 U.S. 345, 349 (1973) (citing cases). Likewise, courts have found the "in custody" requirement satisfied where restrictions were placed on the petitioner's freedom of action and/or movement. See, e.g., Jones v. Cunningham, 371 U.S. 236, 243 (1963) (restrictions due to parole); Dow v. Cir. Ct. of the First Circuit, 995 F.2d 922, 923 (9th Cir. 1993) (per curiam) (petitioner was "in custody" where he was sentenced to 14 hours of required attendance at an alcohol rehabilitation program). In the present case, the Notice of Custody Determination indicates that Petitioner has been released on his own recognizance pending the resolution of his removal proceedings. (Respondents' Supp. Exs., at 172.) His release is expressly conditioned on complying with a number of conditions, including: (1) reporting for any hearing or interview as directed by the DHS; (2) reporting once in person to a deportation officer for processing; and (3) inability to change his place of residence without first securing written permission from an immigration officer. (Id. at 173.) As the Ninth Circuit has noted, restrictions such as these are incompatible with the "liberty to do things which free persons in the United States are entitled to do" and as such satisfy the "in custody" requirement for habeas purposes. See Dow, 995 F.2d at 923; accord Hensley, 411 U.S. at 349; Jones, 371 U.S. at 243.

Moreover, the Court may retain jurisdiction in some cases even if the petitioner is no longer "in custody." As the Ninth Circuit has explained, the two words "in custody" have "a long and venerable line of precedent behind them that compels a more complicated analysis" than merely inquiring whether Petitioner is *currently* being detained. See Williamson v. Gregoire, 151 F.3d 1180, 1182 (9th Cir. 1998). For example, the Ninth Circuit has held that the petitioner's deportation or release from DHS custody does not automatically render his petition moot. See, e.g., Zegarra-Gomez v. I.N.S., 314 F.3d 1124, 1126-27 (9th Cir. 2003). Rather, a habeas petition continues to present a live controversy where there are some remaining "collateral consequences" of the detention "that may be

1 redressed by success on the petition."[1] <u>Abdala</u>, 488 F.3d at 1064 (citing <u>Spencer</u>, 523 U.S. at 7, and <u>Zegarra-Gomez</u>, 314 F.3d at 1127). In the present case, the conditions imposed on Petitioner by the DHS are directly traceable to his detention and can be resolved in Petitioner's favor if the Court determines that he is entitled to derivative citizenship through his father. See <u>Flores-Torres v. Mukasey</u>, 548 F.3d 708, 712-13 (9th Cir. 2008) (concluding that the district court has jurisdiction to adjudicate non-frivolous claims of citizenship brought by detained aliens, even where the removal proceedings are not yet completed). Accordingly, because "collateral consequences" remain, the Court can properly retain habeas jurisdiction over the petition. See <u>Abdala</u>, 488 F.3d at 1064.

Finally, the Court is not persuaded by Respondents' argument that the case is moot because the challenged behavior cannot reasonably be expected to recur. As Petitioner points out, and the Court agrees, because the present decision to release Petitioner on his own recognizance may potentially be revoked at any time in the future, it is not sufficient to moot the case.[2] See <u>Laidlaw</u>, 528 U.S. at 189 ("It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" (citation omitted)).

*iii. Effective relief remains in the form of a determination on the merits.*

The Court is not persuaded by Respondents' argument that the case is moot because the Court cannot provide Petitioner with any effective relief. On the contrary, the Ninth Circuit has recently held that a petitioner "does not have to wait until his removal proceedings are completed and a final removal order is issued before he can secure habeas review of his citizenship claim and of his

---

[1] In this context, the Court is not persuaded by Petitioner's argument that all that is required to be "in custody" is proper habeas jurisdiction when the case was initially filed. (Pet. Reply, at 4.) Petitioner's reliance on a Sixth Circuit case for this proposition is directly contrary to the controlling Ninth Circuit case law. Compare <u>Rosales-Garcia v. Holland</u>, 322 F.3d 386, 395 n.6 (6th Cir. 2003) ("For the purposes of the habeas statutes, a petitioner need only be 'in custody' at the time the petition was filed." (citing <u>Spencer</u>, 523 U.S. at 7)) <u>with</u> <u>Abdala v. I.N.S.</u>, 488 F.3d 1061, 1064 (9th Cir. 2007) ("For a habeas petition to continue to present a live controversy after the petitioner's release or deportation, however, there must be some remaining 'collateral consequence' that may be redressed by success on the petition." (citing <u>Spencer</u>, 523 U.S. at 7, and <u>Zegarra-Gomez</u>, 314 F.3d at 1127)).

[2] At the hearing, Respondents argued that the "voluntary cessation" doctrine does not apply to habeas cases. The Ninth Circuit, however, has left this question open. See <u>Picrin-Peron v. Rison</u>, 930 F.2d 773, 775-76 (9th Cir. 1991). In any event, seeing as the Court has determined that in the present case "collateral consequences" of the challenged detention still remain, that exception in and of itself is sufficient to defeat the mootness argument. See <u>Pub. Utils. Comm'n of Cal. v. Fed. Energy Regulatory Comm'n</u>, 100 F.3d 1451, 1459-61 (9th Cir. 1996) (describing "voluntary cessation" and "collateral consequences" as independent, and self-sufficing, exceptions to mootness).

contention that he may not be detained under the INA." Flores-Torres, 548 F.3d at 713. Rather, a "non-frivolous claim of citizenship" gives the petitioner a "'constitutional right to judicial review,'" id. at 712 (quoting Iasu v. Smith, 511 F.3d 881, 891 (9th Cir. 2007)), and only "'a particularly clear statement' of intent from Congress" can foreclose habeas review by the court. Id. at 712 (quoting Demore v. Kim, 538 U.S. 510, 517 (2003), and I.N.S. v. St. Cyr, 533 U.S. 289, 298-99 (2001)).

The Ninth Circuit has already held that no such impediment to habeas review exists where a person subject to removal proceedings seeks a judicial determination of his non-frivolous claim to United States citizenship.[3] Id. at 711-713. In the present case, Petitioner alleges that his detention is unlawful because he derived United States citizenship from his father, who became a U.S. citizen in 1981 and who allegedly resided in the United States for at least ten years between 1961 and 1973 as required by former Section 301(a)(7) of the INA. This claim is "non-frivolous on its face," and this Court is the "appropriate forum" for resolving such a claim.[4] See id. at 713. Accordingly, because the Court can grant effective relief to Petitioner in the form of a determination on the merits of his derivative citizenship claim, the Court cannot at this time dismiss the petition as moot.

---

[3] As Flores-Torres makes clear, such review is not barred by Section 1252 of the INA, which concerns only judicial review of *orders of removal*. 548 F.3d at 710-11. In the present case, just like in Flores-Torres, Petitioner is not challenging an order of removal but rather the DHS's power to detain him on the assumption that he is not entitled to derivative citizenship. See id. at 711. Moreover, Section 1252 on its face applies only to challenges brought by *aliens*. Accordingly, as Flores-Torres also makes clear, the applicability of Section 1252 is questionable where, as in this case, the petitioner disputes that he is an "alien" and has a non-frivolous claim to citizenship. See id. at 711-12 & nn. 5-6.

[4] Respondents dispute the applicability of Flores-Torres to a case where the petitioner is not being *physically detained* pending the resolution of his removal proceedings. However, the holding of Flores-Torres is not so limited. Rather, the Ninth Circuit was concerned with the government's position that it has the ability to detain without habeas review individuals who assert non-frivolous claims of citizenship during immigration proceedings. Flores v. Torres, 548 F.3d at 712. The Ninth Circuit rejected this position, holding that: (1) habeas jurisdiction exists to review a claim of derivative citizenship of an individual detained during immigration proceedings, and (2) the district court is the "appropriate forum" for resolving such non-frivolous claims to United States citizenship. Id. at 713.

In the present case, the Court has already determined that it continues to have habeas jurisdiction because Petitioner continues to be "in custody," or, if not "in custody," continues to suffer "collateral consequences" of prior detention. Thus, the only remaining issue is whether the Court can also grant Petitioner effective relief in the form of a review of his derivative citizenship claim. Nothing in Flores-Torres suggests that this part of its holding is dependent on the petitioner being in actual *physical custody* as opposed to merely satisfying the "in custody" requirement of Section 2241. Accordingly, because Petitioner raises a non-frivolous claim of citizenship and because the government continues to assert that it has the ability to detain Petitioner in the future, this Court is the "appropriate forum" for determining the merits of Petitioner's citizenship claim. See id.

**II.     Preliminary injunction**

    A.     <u>Legal standard</u>

A party seeking a preliminary injunction must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." <u>Winter v. Nat. Res. Def. Council, Inc.</u>, — U.S. —, 129 S.Ct. 365, 374 (2008) (citations omitted); <u>accord</u> <u>Stormans, Inc. v. Selecky</u>, — F.3d —, 2009 WL 3448435, at *13 (9th Cir. 2009) (citing <u>Winter</u>, 129 S.Ct. at 374). Moreover, in the Ninth Circuit, a preliminary injunction is appropriate if the plaintiff demonstrates that "serious questions going to the merits [are] raised and the balance of hardships tips sharply in the plaintiff's favor." <u>Lands Council v. McNair</u>, 537 F.3d 981, 987 (9th Cir. 2008) (en banc) (internal citations and quotation marks omitted). "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." <u>Indep. Liv. Cntr. of Southern Cal., Inc. v. Maxwell-Jolly</u>, 572 F.3d 644, 651 (9th Cir. 2009) (quoting <u>Winter</u>, 129 S.Ct. at 376) (internal quotation marks omitted).

However, "[a] preliminary injunction may only be granted when the moving party has demonstrated a significant threat of irreparable injury." <u>Simula, Inc. v. Autoliv, Inc.</u>, 175 F.3d 716, 725 (9th Cir. 1999). In addition to establishing a risk of future harm, the plaintiff must show that the harm to be suffered is "imminent." <u>Caribbean Marine Serv. Co., Inc. v. Baldridge</u>, 844 F.2d 668, 674 (9th Cir. 1988). Thus, even if the plaintiff establishes success on the merits, "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." <u>Siegel v. Le Pore</u>, 234 F.3d 1163, 1176 (11th Cir. 2000).

    B.     <u>Analysis</u>

In the present case, even if Petitioner can show "serious questions" going to the merits, he cannot demonstrate "that irreparable injury is *likely* in the absence of an injunction." <u>Winter</u>, 129 S.Ct. at 375 (citations omitted); <u>see also</u> <u>Johnson v. Couturier</u>, 572 F.3d 1067, 1081 (9th Cir. 2009). Petitioner alleges he will suffer irreparable injury in one of two ways: (1) he will be unlawfully deprived of at least 48 hours of liberty because of the immigration detainer and/or DHS's decision to take him into custody, and (2) the DHS might elect to reinstate his previous deportation order and

physically remove him from the country. (Ex Parte Appl., at 4.) However, as already noted, the Court's TRO has effectively "extinguished" the immigration detainer, and Respondents have also indicated they have no intention to detain Petitioner during the removal proceedings. (See Bettwy Decl. ¶ 4.) Moreover, Respondents have decided not to reinstate the prior order of removal and have instead issued a Notice of Custody Determination that informs any ICE field officer that Petitioner might encounter that Petitioner has been released on his own recognizance pending the resolution of his removal proceedings. (See Respondents' Supp. Exs., at 172.) In light of this, any future detention and/or reinstatement of a prior removal order is no more than a "possibility," which is insufficient to warrant injunctive relief. See Winter, 129 S.Ct. at 375-76 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." (citation omitted)). Accordingly, because Petitioner failed to show that irreparable injury is likely absent injunctive relief, the application for a preliminary injunction is **DENIED**.

### III.     Exhaustion of remedies

Before a court can review a final order of removal, exhaustion of administrative remedies is expressly required. See 8 U.S.C. § 1252(d)(1). However, the Ninth Circuit has stated that a non-frivolous claim to derivative citizenship need not be exhausted before it can be considered by the court. See Minasyan v. Gonzalez, 401 F.3d 1069, 1075 (9th Cir. 2005) (citing Rivera v. Ashcroft, 394 F.3d 1129 (9th Cir. 2005)). The district court, nevertheless, has discretion to determine "whether to excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court.'" Rivera, 394 F.3d at 1139, superceded by statute on other grounds, REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(c) (2005), as recognized in Iasu, 511 F.3d at 886-88 (quoting Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990)).

In the present case, the Court chooses to exercise its discretion to stay the proceedings while Petitioner exhausts his administrative remedies. Federal statutes and regulations provide an administrative process for individuals to apply for derivative citizenship and to appeal an unfavorable determination. See 8 U..C. 1452(a); 8 C.F.R. §§ 341.1, 103.3(a). Federal law also provides for review in the district court once those administrative procedures are completed. See 8 U.S.C. § 1503(a). In

1 the present case, the USCIS has already denied Petitioner's application for a certificate of citizenship,
2 and Petitioner has appealed to the AAO. Because judicial resources will be better spent postponing
3 the determination on the merits until the appeal is decided, and because the Court will undoubtedly
4 benefit from the agency's expertise on this issue, the Court will stay the proceedings in this case
5 pending a final determination by the AAO on Petitioner's derivative citizenship claim.

## CONCLUSION

Because the Court concludes that Petitioner is still "in custody" for purposes of Section 2241, or is nevertheless subject to "collateral consequences" of the prior detention, the Court **DECLINES TO DISMISS** the present petition as moot. However, because Petitioner has failed to demonstrate that irreparable injury is likely to result absent injunctive relief, the Court **DENIES** the application for a preliminary injunction. Accordingly, the Court **DISSOLVES** the TRO entered on January 8, 2010.

Moreover, the Court hereby **STAYS** any further proceedings on the merits in this case pending the resolution of Petitioner's administrative appeal to the AAO. The parties shall notify the Court forthwith if there is any determination by the AAO with respect to Petitioner's appeal. Likewise, the parties shall notify the Court forthwith of any determination by the IJ in the removal proceedings or if Petitioner is taken into custody for any reason by Respondents.

Finally, because both sides agree that limited discovery would be helpful in proceeding further, the Court hereby refers the matter to Magistrate Judge Brooks to determine the scope and timing of any discovery necessary to address the derivative citizenship issue.

**IT IS SO ORDERED**

**DATED: January 26, 2010**

*[signature]*

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**